597 So.2d 388 (1992)
ALLSTATE INSURANCE COMPANY, Appellant,
v.
Richard PIERCE, Appellee.
No. 91-1160.
District Court of Appeal of Florida, Fifth District.
April 17, 1992.
F. Bradley Hassell of Eubank, Hassell, Miles & Lewis, Daytona Beach, for appellant.
Allan L. Ziffra of John D. Rue, P.A., Port Orange, for appellee.
DIAMANTIS, Judge.
Allstate Insurance Company appeals the final judgment of the trial court entered in this declaratory judgment action instituted by appellee Richard Pierce. The trial court held that, based upon a finding of an estoppel, Allstate must provide uninsured motorist coverage to Pierce for an automobile accident. We hold that the evidence does not support a finding of estoppel and, therefore, we are constrained to reverse the final judgment.
Pierce's mother, Brenda, who lives in Ohio, has automobile insurance coverage with Allstate. Her insurance agent is her brother-in-law, Howard Behm. The insurance policy names Brenda as the primary insured and states that two cars are covered by the policy, a 1978 Pontiac and a 1985 Mustang. The Mustang is owned and operated by Pierce. The amount of the premium paid by Brenda is calculated by including *389 into consideration the fact that her son operates the 1985 Mustang. The insurance agent, Behm, explained that the policy does not cover Pierce as a named insured but that the policy provides Pierce with uninsured motorist coverage so long as he qualifies as a "resident relative".
The policy specifically provides that, among other things, uninsured motorist coverage will be provided to "insured persons". The policy defines insured persons as "you and any resident relative". The term "you" refers to Brenda, the named insured. The term "resident relative" means any "person who physically resides in your household with the intention of continuing residence there. Your unmarried dependent children, while temporarily away from home will be considered residents if they intend to resume residence in your household."
Pierce enlisted in the armed service after high school and served from November of 1983 through November of 1987. In February of 1987 Pierce married. At that time he did not live with his mother in Ohio, but instead, lived in North Carolina. Upon his discharge in November of 1987 Pierce and his wife returned to Ohio for a short period and stayed with his mother. One month later, in December of 1987, Pierce and his wife moved to Florida because he had enrolled as a student at Embry Riddle University and, in January of 1988, Pierce was involved in an automobile accident in Florida while driving his wife's car.
Pierce filed suit for declaratory relief asserting a claim for uninsured motorist coverage under the terms of his mother's Allstate policy. As we noted, such coverage would apply only if Pierce qualifies as a "resident relative". The evidence clearly establishes that Pierce does not qualify as a resident relative because at the time of the accident he did not physically reside in his mother's household nor was he an unmarried dependent temporarily away from home. Pierce contends, however, that due to representations made by Allstate's insurance agent (Howard Behm) to his mother (Brenda) Allstate is estopped from denying that Pierce is a resident relative. The trial court concluded that Pierce's contention was correct. This conclusion constitutes error.
An estoppel can only be invoked against an insurer when its conduct has been such as to induce actions in reliance upon it. Dean v. Central Mutual Insurance Company, 381 So.2d 737, 738 (Fla. 1st DCA 1980); Burns v. Consolidated American Insurance Company, 359 So.2d 1203, 1207 (Fla. 3d DCA 1978); Travelers Indemnity Company of Rhode Island v. Mirlenbrink, 345 So.2d 417, 419 (Fla. 2d DCA 1977); Mutual of Omaha Insurance Company v. Eakins, 337 So.2d 418, 419 (Fla. 2d DCA 1976).
The evidence establishes that in December of 1987, upon becoming aware that Pierce had relocated to Florida, Behm informed Brenda that Pierce would be required to obtain his own car insurance. Behm represented to Brenda that coverage for Pierce would not automatically end on that day but would continue for a "reasonable amount of time". However, there is no testimony in the record indicating that Brenda relayed this information to Pierce prior to the automobile accident. Additionally, Behm never made any representations to Pierce concerning the need to acquire coverage in Florida. In fact, Pierce had not spoken with Behm about insurance coverage since October of 1986. Therefore, we hold that there is no basis to support the trial court's finding that Pierce detrimentally relied upon any representation made to him by Behm or that Pierce detrimentally changed his position based upon any representation concerning coverage. Consequently, we hold that the trial court erred in concluding that Pierce proved his claim for estoppel. See Professional Underwriters Insurance Company v. Freytes & Sons Corporation, Inc., 565 So.2d 900, 902-903 (Fla. 5th DCA 1990).
Also, even assuming that a representation was made by Behm to Brenda, which could conceivably result in uninsured motorist coverage for Pierce, this evidence alone is insufficient to establish an estoppel because there is no evidence that, as a result of this representation, Brenda made *390 a detrimental change in her position. In fact, upon receiving this information, Brenda did nothing.
Accordingly, we reverse the trial court's judgment entered in this matter and direct that the trial court enter final judgment for Allstate.
REVERSED and REMANDED.
DAUKSCH, J., concurs.
W. SHARP, J., dissents with opinion.
W. SHARP, Judge, dissenting.
I respectfully dissent. Although minimal, I think the testimony at trial is adequate to support the trial judge's finding that Allstate should be estopped to deny coverage to Pierce. St. Joe Paper Co. v. State, Department of Environmental Regulation, 371 So.2d 178 (Fla. 1st DCA 1979).
Pierce joined the army in 1983, after graduating from high school, and was stationed in North Carolina and South Carolina, through October of 1987. He married in February of 1987. After his discharge in October of 1987, he and his wife returned to his mother's home and resided there until December of 1987.
During that time period (1983 to December 1987), Pierce's mother, Brenda, handled all auto insurance matters, for herself and her son. Allstate's agent, Behm, told them Pierce was covered under her policy (which listed his Mustang and her Pontiac) as a "resident relative" during all of that time period. They relied on his advice and Brenda paid premiums for Pierce's coverage  even through the date of Pierce's accident.
In December of 1987, Pierce enrolled in Embry Riddle University, and he and his wife moved to Florida. On January 21, 1988 (some three weeks after his move) Pierce had the accident in Florida for which he sought uninsured motorist coverage under Brenda's policy. It was further established at trial that Allstate's agent, Behm, told Brenda that after Pierce moved to Florida he would have to get his own auto insurance policy to have coverage. But, he also told her that coverage for Pierce would not be "cut off" immediately and that he would continue to be covered under her policy "for a reasonable time."
Brenda testified she relied on Behm's advice and took no steps to get a new policy for Pierce during that three week period after he moved to Florida. The issues (in my view) are whether three weeks was "a reasonable time" and whether Brenda (who had always acted as Pierce's agent in insurance matters) relied on Behm's statement. The trial court so found[1] and I think we should affirm his finding of estoppel on this record.
NOTES
[1] The trial judge made extensive findings of fact. Among them are:

* * * * * *
8. Howard Behm was aware that Richard Pierce was away from the residence of Brenda Pierce while in the service and not a resident relative and was aware that Richard married and lived with his mother and was a resident relative from October of 1987 to December of 1987 when he left for Florida to go to school.
9. Knowing the above in December of 1987, Howard Behm, in effect, represented that Brenda and Richard Pierce's coverage would not be immediately discontinued because of the fact he was moving to Florida and would no longer be a resident at his mother's home.
10. In effect, he represented that coverage would be continued for the benefit of Richard Pierce for a reasonable period of time until he could obtain his own insurance coverage in Florida.
11. In effect, Howard Behm's statements were reasonably calculated to lead Brenda Pierce and her son, Richard Pierce, to believe that Richard would be covered and an insured under the policy in question for all purposes and without exception for a reasonable period of time to and including the date of the accident in question in January of 1987.
12. The course of dealing over the years in connection with the insurance coverage presented by Howard Behm for Brenda Pierce was very informal. Brenda and Richard Pierce reasonably relied upon Howard Behm to take care of their insurance needs and notify them if there were any problems. Brenda Pierce, in the course of dealing, always discussed both her and her son's insurance needs with Howard Behm and relayed any pertinent matters and questions relating to insurance learned from her communication with Howard Behm to Richard.
13. Given the course of dealings between the parties and given the statements and assurances to Brenda Pierce by Howard Behm, the Court finds that Allstate Insurance Company is estopped from denying coverage for uninsured motorist coverage to Richard Pierce for the accident in question.
* * * * * *
15. In summary, the Court finds that there is clear and convincing evidence from the foregoing to find that Richard Pierce and Brenda Pierce relied reasonably on the representations by the agent, Howard Behm, that insurance coverage for Richard, including uninsured motorist benefits, would remain in effect for a period of time including the date on which the accident in question occurred; and that Richard Pierce and Brenda Pierce so relied, to their detriment.